### ROCK ISLAND REFINING CORPORATION

v.

### DEPARTMENT OF ENERGY.

Civ. A. Nos. IP 77–431–C, IP 77–82–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Feb. 16, 1979.

John D. Cochran and David N. Shane, Indianapolis, Ind., for plaintiff.

C. Lee Allen, Robert G. Heiss and Nancy C. Crisman, Dept. of Energy, Washington, D. C., for defendant.

## MEMORANDUM ENTRY

NOLAND, District Judge.

This cause seeks review of the actions of the Department of Energy (DOE) relative to the plaintiff's application for exception relief under that agency's Entitlements Program. The Entitlements Program was established in response to the effects of the two-tier pricing structure created by Congress in order to maintain controls on the price of existing sources of oil while allowing increased prices to encourage the discovery of new sources of oil. In an effort to spread the advantage of lower cost crude evenly between all refiners the DOE's predecessor established a program to require those refiners utilizing more old oil than the national average to buy entitlements for such usage from refiners who were utilizing a proportionately greater share of newly discovered crude. Because these purchases involved large expenditures a plan was established to provide exceptions for small refiners in order to assure their continued financial viability in a world of rising oil prices.

It is this exception relief for which the plaintiff applied and which provides the basis for its requested review in this Court. All administrative appeals have now been concluded and the plaintiff seeks review of those actions. The plaintiff has alleged several distinct grounds for objection to the DOE's action which this Court must consider individually. Prior to beginning that task, however, it would be best to set the standard which will be applicable to this Court's review of those actions.

In *Husky Oil Co. v. Dept. of Energy,* 582 F.2d 644, 653 (1978) the Temporary Emergency Court of Appeals which has exclusive jurisdiction of all appeals in actions of this nature outlined the following standard for

review in a case challenging the DOE's determination of exceptions relief:

> The DOE's administrative orders are reviewed to determine whether they are "in excess of the agency's authority, or . . . based upon findings which are not supported by substantial evidence." § 211(d)(1) of the Economic Stabilization Act, incorporated by reference in § 5(a)(1) of the EPAA. Great deference is accorded the interpretations of statutes, implementing regulations, and orders by the agency charged with administering them, see *Pasco, supra,* at 1400. Although this court in *Pasco,* supra, at 1404, observed that
>
> > [a]dministrative decisions based upon analysis of the data and information submitted on application for exception relief require the application of administrative expertise, and this court should not be quick to overturn them,
>
> the DOE, by relying on Husky's production activities and imposing a negative profit margin on Husky for purposes of evaluating current financial posture and determining exception relief, issued an order which was beyond its authority and not supported by substantial evidence, is without rational basis, inflicts a serious, special hardship and gross inequity on Husky, and is arbitrary, capricious, and discriminatory.

This citation clearly sets this Court's inquiry as a review for arbitrary and capricious action which irrationally inflicts a serious, special hardship and gross inequity on the plaintiff or exceeds the agency's authority. In the absence of such a showing the DOE's actions must be sustained.

### SEVEN–YEAR BASE PERIOD

In determining a refiner's need for relief the DOE uses a comparison approach which may allow relief sufficient to assure that a refiner will maintain its historic profit margin. This historic rate is determined by averaging its profit margin for the preceding seven years. Because non-recurring events may cause gross disparities in certain years the DOE, upon a proper showing, will exclude such years from its determination of the average profit margin. Plaintiff

here argues it made a showing relative to the years 1970–72 and yet the DOE denied its request to exclude those years.

Both parties agree that *OKC Corp.,* 2 FEA ¶ 80,604 (June 5, 1975), provides the standard for determining whether an alteration of the seven-year rule should be made in a particular case. The plaintiff emphasizes that its expansion program caused abnormally low profits in 1970–72 as was true in other cases in which the DOE's predecessor granted relief similar to that sought here; however this places too much emphasis on one part of a four part test. The DOE must balance all four elements of this test in order to equitably determine the need for this type of adjustment. This requirement is mandated by the DOE's duty to achieve an " 'equitable distribution of crude oil . . . at equitable prices among all . . . sectors of the petroleum industry . . .' " *Pasco Inc. v. FEA,* 525 F.2d 1391, 1397 (TECA 1975). The Entitlements Program is not a one-to-one relationship between refiners and the DOE since exception relief granted to one refiner must be borne by all others.

The plaintiff relies upon four decisions of the DOE in addition to *OKC, Husky Oil Co. of Delaware,* 2 FEA ¶ 83,146 (March 28, 1975); *Powerine Oil Co.,* 2 FEA ¶ 83,096 (March 28, 1975); *Faramiss Oil Corp.,* 2 FEA ¶ 83,080 (March 28, 1975); and *Kern County Refining,* 3 FEA ¶ 83,226 (June 18, 1976), to support its claim that it is being unfairly treated relative to other refiners. It is important to note that the first three all preceded the DOE's issuance of *OKC* and thus, though consistent therewith, they did not include the same elaboration of grounds for adjustment as found in that decision. No argument may be made that the type of clarification and detail announced in *OKC* constitutes arbitrary action by the DOE unless it may also be held that the refinement of standards for decision is improper. These standards must evolve over time and may thus result in some logical inconsistencies; however, the DOE's actions may be found to be irrational and arbitrary only when established standards are not applied in a uniform manner.

No such showing has been made here. *OKC* and *Kern County* are both factually distinguishable in light of the purchase of existing refineries by these firms and the burdens which that placed upon them.

■ In light of these facts the Court must find that no reversible error has been shown in the DOE's denial of the plaintiff's request to exclude 1970–72 from its historic profit margin.

## EFFECT OF INFLATION ON HISTORIC ROIC

In *Delta Refining Co.,* 2 FEA ¶ 83,275 (September 11, 1975) the DOE's predecessor instituted a second comparison test for determining a refiner's need for exception relief, return on invested capital (ROIC). This second means of comparison is used in conjunction with the profit margin comparison to determine the effect of the Entitlements Program, with the agency's goal being to assure that a refiner is granted sufficient relief in order to maintain either its historic profit margin or its historic ROIC. As noted above historic profit margin is the refiner's average profit margin over the preceding seven years while historic ROIC is the average of its highest ROIC in four out of the last seven years.

The DOE has used the ROIC test to determine all of plaintiff's post-September 1975 exception relief. The plaintiff objects that this test is invalid because it, unlike the profit margin test, fails to account for inflation thus causing it to be artificially low. The DOE responds that its deletion of the three lowest of the seven annual figures works to adjust for this problem. In addition it cites numerous authorities in support of its position that ROIC is an appropriate tool for evaluating a refiner's financial status. The ROIC test has received the tacit approval of the Temporary Emergency Court of Appeals in several opinions. *Husky Oil Co. v. Dept. of Energy,* 582 F.2d 644 (1978); *Delta Refining Co. v. FEA,* 559 F.2d 1190, 1192 (1977); *Powerine Oil Co. v. FEA,* 536 F.2d 378 (1976).

This Court does not wish to delve into the intricacies of this accounting dispute which is best evaluated through the expertise of the agency involved. The question of whether this test properly implements the Congressional directive issued to this agency is a matter on which the determination of the DOE must be given great deference. *Husky Oil Co. v. Dept. of Energy,* 582 F.2d 644, 653 (TECA 1978). There is, however, a more important reason for affirming the DOE on this issue—the plaintiff has not shown how this policy adversely affects it. It must be remembered that the Entitlements Program is not a one-to-one relationship between the refiner and the DOE, but rather is a zero sum game wherein all entitlements must be distributed between all refiners. The only question is how many each refiner will receive. Because this is the case it is incumbent upon the plaintiff to show that use of the ROIC test has discriminated against it relative to other refiners. Assuming the standards outlined in *Delta,* including the ROIC test, are uniformly applied to all refiners the potential inaccuracy caused by the effects of inflation will affect all refiners and thus have little effect on the overall distribution of entitlements. In the absence of a showing by the plaintiff that it or a group of which it is a part unfairly suffers due to these potential inaccuracies relative to other refiners, it has failed to show its need for relief.

■ For these reasons the Court must find that no reversible error has been shown in the DOE's use of the ROIC test due to the effects of inflation upon that test.

## ADJUSTMENT OF ROIC FOR INVESTMENT TAX CREDIT

In determining both historic and current ROIC the DOE utilized the plaintiff's financial statements which included an adjustment for the investment tax credit provided by 26 U.S.C. § 38. The plaintiff asserts that these statements should have been adjusted to eliminate the effects of this credit pursuant to § 203(e) of the Revenue Act of 1964 which states:

It was the intent of Congress in providing an investment credit under section 38 of the Internal Revenue Code of 1954 . . to provide an incentive for modernization and growth of private industry (including that portion thereof which is regulated). Accordingly, Congress does not intend that any agency or instrumentality of the United States having jurisdiction with respect to a taxpayer shall, without the consent of the taxpayer, use—

(1) . . .

(2) in the case of any . . . property, any credit against tax allowed by section 38 of such Code,

to reduce such taxpayer's Federal income taxes for the purpose of establishing the cost of service of the taxpayer or to accomplish a similar result by any other method.

The plaintiff argues this provision bars all regulatory agencies from performing their functions without eliminating the effect of the credit from their calculations.

The Investment Tax Credit was first approved in the Revenue Act of 1962. The Senate Report accompanying that statute states:

The objective of the credit is to reduce the net cost of acquiring new equipment; this will have the effect of increasing the earnings of new facilities over their productive lives and increasing the profitability of productive investment. 2 *U.S. Code Cong. & Admin.News,* p. 3314 (1962).

It further quoted the Secretary of the Treasury who had supported the bill as a means of "increasing the relative attractiveness of domestic as compared with foreign investment . . ." *Id.* at 3313. In short this tax provision is designed to improve a company's ability to attract capital by increasing the return it will receive from the investment of that capital.

In 1964, § 38 was amended to clarify the intent of Congress relative to the use of this credit by regulated industries. The reason for this amendment is found in the House Report to the Revenue Act of 1964:

Despite the statements cited above, the Federal Communications Commission has indicated that it is its policy that any benefits from the investment credit made available by the Revenue Act of 1962 should "flow through" immediately to the customers. In addition, the staff of the Federal Power Commission has recommended the same position. This is clearly contrary to the intent of Congress in enacting this provision and as a result your committee has added a provision to this bill reasserting its position that it was and is not its intention that the federal regulatory agencies require the benefit of the investment credit to "flow through" in this manner. 1 *U.S.Code Cong. & Admin.News,* p. 1345 (1964).

In short Congress has reaffirmed its intent that investors are to reap the benefits rather than the consuming public as a whole.

Upon viewing Rock Island as a single refiner the logic of its argument has merit. Through the adjustment it seeks it will be required to purchase fewer entitlements and thus will reap a higher return on its investment for the benefit of itself and its stockholders. It is important to remember, however, that the Entitlements Program is not a one-to-one relationship between a refiner and the DOE. There is a finite number of entitlements which must be spread between all refiners. Any reduction in the plaintiff's obligations necessarily results in an increase in the obligations of all other refiners. Unlike the effect of inflation discussed above, uniformity cannot be assumed so some shift in the burden is inevitable.

In the absence of a clear showing that this shift was intended by Congress when it passed § 203(e) in 1964 the Court must reject the plaintiff's position. The language quoted above from the Senate Report to the Revenue Act of 1964 indicates Congress was principally concerned about efforts to use the credit to reduce the costs to consumers through lower rates or subsidies, but that is not the purpose behind the DOE's action here. In light of the Temporary Emergency Court of Appeals' emphasis on special hardship in *Husky,* this Court must be concerned about the effects of any

actions of the DOE upon all refiners and not just this plaintiff. Because this is a very close issue in terms of the equities on each side of the interpretation of this statute the Court must give deference to the determination of the DOE in its application of this tax statute to its unique program.

■ For these reasons the Court must find that no reversible error has been shown in the DOE's refusal to adjust the plaintiff's financial statements for the investment tax credit.

### CONGRESSIONAL EXEMPTION OF SMALL REFINERS

In 1975 the Congress enacted an exemption from the requirements of the Entitlements Program for small refiners such as the plaintiff from all payments due on or after December 31, 1975. The payments which the DOE has assessed against the plaintiff arose out of a payback of revoked exception relief for months preceding the Congressional exemption. The plaintiff argues the plain wording of the exemption does not recognize this distinction between payments currently due and those arising through payback requirements.

Though the wording of § 403(a) of the Energy Policy and Conservation Act of 1975 does not seem to make the required distinction, the logic of it is inescapable. If the plaintiff's position is to be sustained only those refiners whose initial applications were honest and accurate will suffer the effects of the Entitlements Program for the first ten months of 1975 while refiners such as plaintiff whose ultimate position proved to be much different from its estimates will receive a windfall. In the absence of clear congressional intent favoring this result, the Court cannot sustain this plaintiff's claim. This result is supported by the Temporary Emergency Court of Appeals' approval of year-end reassessment in *Delta Refining Co. v. FEA,* 559 F.2d 1190 (1977).

■ For these reasons, the Court must find that no reversible error has been shown in the DOE's assessment for entitlements prior to October of 1975.

### ADJUSTMENT OF 1975 EXCEPTION RELIEF

On April 28, 1978, after the plaintiff had filed its motion for summary judgment, the DOE issued a decision and order granting it $1,595,586 in exception relief in response to three objections the plaintiff raised relative to 1975 entitlements: (1) Retroactive application of the ROIC test, (2) Inclusion of the months of October and November in the 1975 calculations, and (3) Calculation of exception relief based upon the cash method of accounting rather than the accrual method. Each of these errors was admitted by the DOE and allegedly corrected by its April 28 order.

The plaintiff in its reply brief asserts that the $1,595,586 is not the full amount of relief to which it is entitled but rather is the amount it was originally granted before recalculation employing the three assumptions listed above which the DOE now admits were wrong. The plaintiff asserts it is due $1,621,484 based upon a final year-end evaluation. Having reviewed the mathematical calculations contained in the decision and order of April 28, 1978, in light of the plaintiff's sparse specifications of error on this point, this Court must sustain the DOE's determination. The plaintiff brought to the Court's attention no evidence in the record to dispute the DOE's figures.

■ In light of these facts the Court must find that no reversible error has been shown in the DOE's grant of $1,595,586 in exception relief for 1975.